146 So.2d 872

**BOARD OF WATER AND SEWER COM'RS OF the CITY OF MOBILE et al.**

**v.**

**W. G. SPRIGGS et al.**

I Div. 877.

Supreme Court of Alabama.

Oct. 25, 1962.

Albert S. Gaston, Mobile, for appellees.

Hardy B. Smith of Gaillard, Gaillard & Smith, Mobile, for appellants.

COLEMAN, Justice.

This is an appeal by respondents from a decree overruling motions to discharge and to dissolve a temporary injunction. Errors severally assigned are that the court erred in overruling each motion, respectively.

Respondents moved to discharge the injunction, "because it affirmatively appears

from the Bill of Complaint that the said bill is not properly verified as required by statute and rules of this Court."

█ It is settled that a verification wherein affiant affirms merely that certain facts are, "true to the best of his knowledge, information and belief," means nothing "more than the affiant *believes* the allegations of the bill to be true, though he has neither knowledge nor information of their truth," and, "an affidavit of belief in their truth simply amounts to nothing." Burgess & Co. v. Martin, 111 Ala. 656, 20 So. 506; Brooks v. Everett, 271 Ala. 380, 124 So.2d 100.

█ The verification in the instant case is merely that affiants say that the facts stated in the bill "are true and correct to the best of their knowledge, information and belief." The verification is insufficient.

Complainants reply, however, that the motion to discharge did not point out the defect in the verification with sufficient certainty, and, therefore, the motion to discharge was overruled without error, citing Barnett v. State ex rel. Simpson, 235 Ala. 326, 179 So. 208.

In Barnett, on appeal from decree, which, inter alia, overruled demurrer to the bill and motions to dissolve and to discharge a temporary injunction, this court held that the trial court did not err in overruling a ground of demurrer which attempted to question the verification of the bill. This court said: "That ground of demurrer * * * did not point out the defect in the verification with sufficient certainty." 235 Ala. at page 327, 179 So. at page 210.

We have examined the record in Barnett. The ground of demurrer charging defect in the verification recites as follows:

"(3) Said bill or petition is not verified as required by law."

The motion to discharge in the instant case is to the same effect. If the ground of demurrer in Barnett was lacking in certainty, then the instant motion to discharge was also lacking in certainty.

In Barnett, the lack of certainty was in the ground of a demurrer while the lack here is in the ground of a motion to discharge. We see no reason, however, why a motion to discharge may be less certain than a demurrer. As to certainty in pointing out a defective verification, both demurrer and motion should conform to the same standard because both constitute nothing more or less than a pleading which points out a defect in the pleading of the opposite party. In this respect, they stand on the same ground.

We have noted further in the Barnett record that the motion to discharge in that case contained several grounds which did point out the defect in the verification with certainty, e. g., "(5) The affidavit does not state the reason for B. F. Weathers making it instead of the officer filing the suit." This court held that the motion to discharge in Barnett, was also overruled without error, but not because the motion failed to point out the defect in the verification with sufficient certainty. The holding was that the motion to discharge, as to the defect in the verification, "was waived, as a matter of law, by defendant's filing his answer and going to trial on the merits of the case." 235 Ala. at page 328, 179 So. at page 210. There was no such waiver of the motion to discharge in the instant case.

█ We hold that the instant motion to discharge failed to point out the defect in the verification with sufficient certainty and, for that reason, was overruled without error.

Complainants are two individuals who appear to have acted jointly in bidding to perform the work on a construction job. Respondents are the Board of Water and Sewer Commissioners of the City of Mobile and the members of the board. The bill of complaint recites:

"1. That in the month of June, 1959, the Board of Water and Sewer Commissioners of the City of Mobile, Ala-

bama advertised for bids for the construction of a project known and described as 'Outfall Sewer—Alpine Hills Subdivision to Three Mile Creek Trunk Sewer—Project No. 276–A–6 And Water and Sanitary Sewers—Alpine Hills Subdivision, Plat VIII'.

"2. That each bidder thereon was required, as a condition of his bid, to file with the Defendants a bid bond in the amount of ten percent (10%) of his bid.

"3. That this was the second time that the Defendants had advertised for bids for said construction, all bids previously submitted at the first advertising therefor having been rejected because in the opinion of the Defendants they were too high.

"4. That three bids were submitted as a result of the said advertising in June, 1959, namely: W. R. Mitchell, in the amount of $78,948.86; Campbell Plumbing & Heating Company, in the amount of $69,245.06; and Complainants' in the amount of $44,303.39.

"5. That Complainants deposited with Defendants along with their bid a bid bond required as aforesaid, in the amount of $4,430.34.

"6. That after submission of his (sic) bid Complainants discovered that in making their computations they had inadvertently failed to follow the route for the laying of the outfall sewer line as set forth in the specifications, and had, instead, based his (sic) computation of cost there_of on a different route.

"7. That it would be much more expensive for them to perform the work along the route specified than along the route contemplated by them when they submitted his (sic) bid.

"8. That his (sic) bid is actually below what it would cost them to perform the work in accordance with the specifications.

"9. That they explained the entire situation to the Defendants and asked that they be relieved of their bid on the grounds that it was an honest mistake on their part.

"10. That the Defendants have refused to relieve them of their bid, have informed them that they are bound by it, and have threatened to forfeit their bid bond if they do not perform their contract.

"11. That the Defendants have sustained no injury by Complainants' mistake and Complainants have agreed to pay all expenses of said second advertising and of a re-advertising for bids.

"12. That to require Complainants to comply with their said bid, or, in lieu thereof, to forfeit their said bid bond, would constitute a hardship on them amounting to an injustice.

"13. That the forfeiture of their bid bond would cause Complainant (sic) irreparable injury.

"14. That Complainants have no adequate remedy at law.

"15. Complainants offer to do equity in this, that they submit to the jurisdiction of this Court and agree to abide by all orders and decrees rendered herein."

The prayer is to restrain respondents from forfeiting complainants' bid bond and, on final hearing, to declare the bid bond null and void and to permanently restrain its forfeiture by respondents.

On an ex parte application by complainants, the court ordered that a temporary restraining order issue as prayed upon complainants' making bond, conditioned as provided by law, for $350.00. Bond was made and temporary injunction issued. Respondents moved to dissolve on the ground that there is no equity in the bill for several reasons, among them being the following:

"1. The allegations of the bill show only that the bid of the Complainants

was the result of a mistake on their part.

"2. That no mistake or error on the part of the Respondent Board or its members or its engineers is alleged.

"3. That no facts are alleged to show any duty on the part of the Respondents to reject the bid of the Complainants or to relieve the Complainants from said bid.

"4. No facts are alleged to show that the amount of the Complainants' bid was unreasonable in relation to the specifications furnished Complainants by the Respondents."

This court has held that; under § 4526, Code 1907, which, without material change is § 1052, Title 7, Code 1940; a respondent may move to dissolve an injunction for want of equity in the bill. The court said:

"While [Section 3121 of] the Code of 1907 abandons the motion to dismiss a bill for want of equity and puts the respondent to a general demurrer, yet the right to move to dissolve an injunction for want of equity in the bill is still preserved by section 4526, and which was made in the present case. The present bill avers no facts whatever, and falls far short of the requirements as to equity pleading (Seals v. Robinson, 75 Ala. 363), and is, therefore, wanting in equity. It is true that, in passing upon the equity of a bill, its equity will be sustained, if the facts, whether well or poorly pleaded, make out a case for equitable relief, and all defects as to manner or form of pleading will be considered as made; but this presumption does not extend to the addition of facts not set forth. The present bill avers no facts, and all intendments may be resolved in favor of the manner or form of pleading, and it would still be wanting in equity." Woodward v. State, 173 Ala. 7, 13, 55 So. 506.

■ A bill without equity will not support an injunction of any character, under any circumstances. McHan v. McMurry, 173 Ala. 182, 55 So. 793; Hamilton v. Alabama Power Company, 195 Ala. 438, 70 So. 737; Pearson v. Duncan & Son, 198 Ala. 25, 73 So. 406, 3 A.L.R. 242; Coley v. English, 204 Ala. 691, 87 So. 81; Wallace v. Lindsey, 270 Ala. 401, 119 So.2d 186; Brotherhood of Locomotive F. and E. v. Hammett, 273 Ala. 629, 144 So.2d 58.

■ The rule is that the equity of a bill must be sustained on the facts alleged and not on those inferred. The equity of a bill must rest on facts alleged and not on conclusions which are stated in the bill but not supported by the facts alleged. The following statement of this court supports this rule:

"Bills must contain a clear and orderly statement of the facts without prolixity or repetition, and conclude with a prayer for appropriate relief. No combination or confederacy is necessary. The courts discountenance prolixity and false allegations. Code, § 3094. It is only necessary to allege facts, not evidence nor conclusions. Bills should be sustained on the facts alleged, and not those inferred. A general charge of fraud without facts is insufficient. Argumentative allegations and expressions of opinion in bills are objectionable. Bills are construed against the pleader, and facts not averred are deemed not to exist. (Citations Omitted.)

"These general rules of equity pleading apply with peculiar force and strictness to injunctions and other extraordinary process. Mere conclusions of the pleader are not sufficient in such cases. The facts should be alleged in a case like this, so that the court, and not the pleader, may judge as to whether or not the extraordinary process should issue, and the strong arm of equity be extended to avert irreparable injury. The state and federal decisions agree as to this. (Citations Omitted.) Good pleading in equity requires that the

complainant shall set out in his bill all the essential facts on which he relies for relief. No facts are properly at issue unless charged in the bill. Even admissions in the answer concede only the facts that are well pleaded." Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150, 154, 77 So. 574.

■ The equity of the instant bill is rested on the principle which has been referred to by this court as follows:

"If one of the parties, through mistake, names a consideration that is out of all proportion to the value of the subject of negotiation and the other party realizing that a mistake must have been committed, takes advantage of it and refuses to let the mistake be corrected when it is discovered, he cannot under these conditions claim an enforceable contract. Where there is a mistake that on its face is so palpable as to place a person of reasonable intelligence upon his guard, there is not a meeting of the minds of the parties, and consequently there can be no contract. 6 R.C.L. page 623, section 42; 12 Amer.Jur. 624, section 133, and cases there cited." Ex parte Perusini Const. Co., 242 Ala. 632, 636, 7 So.2d 576, 578.

The validity of the equitable principle which permits a contracting party to obtain cancellation for his own unilateral mistake has been recognized by this court as follows:

" * * * As a result of the principle it was held that where one of the parties through mistake names a consideration out of all proportion to the value of the subject involved, and the other party realizes that a mistake has been made, the bid is not enforceable. This is a principle which seems to be fully recognized though the law may provide that a bidder shall not have authority to withdraw or cancel his bid until the board shall have let the contract. Moffett, Hodgkins & Clarke Co.

v. City of Rochester, 178 U.S. 373, 20 S. Ct. 957, 44 L.Ed. 1108; 43 Am.Jur. 805, section 63; 80 A.L.R. 586 et seq." Townsend v. McCall, 262 Ala. 554, 559, 80 So.2d 262, 266.

■ Cases on the general rule permitting cancellation of a contract for unilateral mistake are referred to in 59 A.L.R. 809. On page 827 appears a section of the annotation on application of the rule to bids for public improvements. Examination of the following cases supports the annotator's statement that one essential condition to relief is as follows:

" * * * (1) The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable. * * *." (59 A.L.R. 809)

Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U.S. 373, 20 S.Ct. 957, 44 L. Ed. 1108; Geremia v. Boyarsky, 107 Conn. 387, 140 A. 749; Steinmeyer v. Schroeppel, 226 Ill. 9, 80 N.E. 564, 10 L.R.A.,N.S., 114, 117 Am.St.Rep. 224; Bromagin v. Bloomington, 234 Ill. 114, 84 N.E. 700; Board of School Comrs. v. Bender, 36 Ind.App. 164, 72 N.E. 154; Board of Regents v. Cole, 209 Ky. 761, 273 S.W. 508; St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N.W. 500, L.R.A.1917D, 741; Barlow v. Jones, N.J.Eq., 87 A. 649; City of New York v. Dowd Lumber Co., 140 App.Div. 358, 125 N.Y.S. 394; Harper, Inc. v. City of Newburgh, 159 App.Div. 695, 145 N.Y.S. 59; Leonard v. Howard, 67 Or. 203, 135 P. 549.

Examination of the instant bill for facts, not conclusions, to show that to deny cancellation would be unconscionable discloses the following averments:

That respondents advertised for bids; that this was the second advertisement; that all bids submitted on the first advertisement had been rejected because, in opinion of respondents, the bids were too high; that bids were submitted on the second advertisement in amounts of $78,948.86, $69,245.-06, and $44,303.39, respectively; that the lowest bid was that of complainants; and

that complainants had inadvertently failed to follow the specifications. The averment as to inadvertence is more conclusion than fact, as is the further averment that complainants' bid "is actually below what it would cost them to perform the work."

We do not think that, on these averments, it must be concluded that respondents would derive an unconscionable advantage if complainants be denied cancellation. In Leonard v. Howard, supra, it appears that the amount of the bid was $4,975.00. In refusing to hold that the bidder was entitled to cancellation for unilateral mistake of the bidder resulting from his inattention, the court said:

"* * * We cannot assent to the proposition that by reason of the mistake made by Howard there was no 'meeting of minds' upon a contract. The subject of the contract, the thing to be done, was the plumbing in the Goode Building. As a detail of this a certain number of toilets, lavatories, and sinks were sketched upon the plans submitted to the defendants. They bid upon the contract, but by inattention overlooked some of the details, and bid too low. The case is not different from what it would have been had they correctly counted the articles to be furnished, and by some mistake or oversight miscalculated the cost of them, and thereby been misled into making an unprofitable bid. Had a fraudulent plan been furnished defendants, or had they by any wrongful act or neglect of plaintiff been induced to make the bid, the case would have been different; but in our opinion the evidence shows that the low bid made by them was the result of a mistake, and this mistake the result of Howard's careless examination of the plans. Under such circumstances neither law nor equity will help them. Brown v. Levy, 29 Tex.Civ.App. 389, 69 S.W. 255; Steinmeyer v. Schroeppel, 226 Ill. 9, 80 N.E. 564, 10 L.R.A.,(N.S.), 114, 117 Am.St.Rep.

224; Crilly v. Board of Education, 54 Ill.App. 371. There is no such discrepancy between the bid submitted and the next higher bid as would justify us in saying, as a matter of law, that plaintiff was thereby put upon notice that Howard had made a mistake. That bid was $1,852 higher, and another bid was $1,900 higher than that. We are not aware of any rule of law or morals that requires a person soliciting bids for services to be performed to warn the bidder that his bid is so low that he may lose money by complying with its terms." (67 Or. at pages 211, 212, 135 P. at pages 552)

In the instant case, complainants allege that to do the work would cost them more than their bid, but fail to allege what the reasonable cost or value of the work would be, so that the court might ascertain whether the disparity between bid and reasonable value is so great that it would be unconsionable to hold complainants to their bid.

Complainants allege that they "inadvertently" failed to follow the route in the specifications. In granting cancellation, the Connecticut court said:

"As a general rule, a party will not be given relief against a mistake induced by his own culpable negligence. ' "But the rule is not inflexible and in many cases relief may be granted although the mistake was not unmixed with some element of negligence, particularly where the other party has been in no way prejudiced." ' Fountain Co. v. Stein, 97 Conn. 619, 626, 118 A. 47, 27 A.L.R. 976; Petterson v. Weinstock, 106 Conn. 436, 445, 138 A. 433, 437; 21 Corpus Juris, 88. 'The conclusion from the best authorities seems to be that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief if it appears that the other party has not been prejudiced

thereby.' 2 Pomeroy's Eq. Juris. (4th Ed.) § 856. * * *." Geremia v. Boyarsky, 107 Conn. 387, 391, 140 A. 749, 750.

In Steinmeyer v. Schroeppel, supra, however, the Illinois court held that the mistake was not excusable; and in Leonard v. Howard, supra, relief was denied, the court saying: " * * * the low bid * * * was the result of a mistake, and this mistake the result of * * * careless examination of the plans." For aught that is averred, the instant mistake resulted from careless examination of plans.

We are of opinion that the bill is without equity because the facts averred fail to show that holding complainants to their bid would be unconscionable or that their negligence was excusable.

The trial court erred in not sustaining the motion to dissolve the injunction for want of equity in the bill, and the decree is reversed, and one is here rendered sustaining the motion and dissolving the injunction. Woodward v. State, 173 Ala. 7, 55 So. 506.

Reversed and rendered.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.